UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
EMANUEL DASH,

              Plaintiff,

                                       **MEMORANDUM & ORDER**

    - against -                          17-CV-515 (PKC) (RER)

DETECTIVE RONALD J. MONTAS and
DETECTIVE WILLY JOHNSON,

              Defendants.[1]
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Emanuel Dash brings this action against Defendants New York City Police

Department ("NYPD") Detective Ronald J. Montas and Detective Willy Johnson, alleging various

claims under 42 U.S.C. § 1983 in connection with Plaintiff's arrest on April 27, 2015. Currently

before the Court is Defendants' motion for summary judgment. For the reasons stated below,

Defendants' motion is granted in its entirety.

## BACKGROUND

**I.**     **Relevant Facts**

**A.**     **Robberies and Plaintiff's Identification**

In April 2015, four armed robberies were committed at a wine store, a deli, a laundromat,

and a dry cleaner, all in the vicinity of Plaintiff's residence at 411 Lafayette Avenue, Brooklyn,

New York. (Defendants' Rule 56.1 Statement[2] of Material Facts ("Defs.' 56.1"), Dkt. 83, ¶¶ 5–

---

[1] Plaintiff withdrew his claims against all defendants initially named, with the exception of
Defendants Montas and Johnson. (*See* May 31, 2017 Minute Entry.) The Clerk of Court is
respectfully directed to update the docket accordingly.

[2] Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that this
Court has deemed the underlying factual allegation undisputed. Any citation to a 56.1 statement

6.) The four robberies were investigated as a "pattern" because all were gunpoint robberies of commercial establishments located in close proximity to one another, and all were committed by a lone African-American man of similar height and weight. (*Id.* ¶¶ 7–8.) Defendant Montas, who had been assigned as lead detective of the investigation, personally responded to the laundromat robbery on April 20, 2015. (*Id.* ¶¶ 9–10.) Defendant Montas viewed security video of the robbery with G.S.,[3] who operated the laundromat, and O.A.,[4] who worked at the neighboring deli.[5] (*Id.* ¶¶ 16–17; Deposition of Detective Montas ("Montas Dep."), Dkt. 82-2, at 55:16–56:2.) G.S. was present for, and had witnessed, the robbery of his laundromat. (Defs.' 56.1, Dkt. 83, ¶¶ 13–14.) O.A. was able to identify Plaintiff by first name as the robber in the laundromat security video because Plaintiff had been in O.A.'s deli before.[6] (Montas Dep., Dkt. 82-2, at 57:13–58:22.)

---

incorporates by reference the documents cited therein; where relevant, however, the Court may cite directly to an underlying document. The Court has deemed facts averred in a party's 56.1 statement to which the opposing party cites no admissible evidence in rebuttal as undisputed. *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original)). Additionally, to the extent a party's 56.1 statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts," the Court has disregarded the statement. *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012).

[3] Pursuant to the parties' protective order of November 21, 2017, the name of this individual has been redacted. (*See* Dkt. 45.)

[4] Pursuant to the parties' protective order of November 21, 2017, the name of this individual has been redacted. (*See* Dkt. 45.)

[5] O.A.'s deli had not been robbed as part of the four robberies. (Montas Dep., Dkt. 82-2, at 56:5–7.)

[6] The descriptions of the perpetrator of each of the four robberies were similar. (Montas Dep., Dkt. 82-2, at 25:6–14.) Montas did not recall specifics but testified that the perpetrator was described to be "five feet and change" in height (*id.* at 25:18–21), and "younger than thirty" years of age (*id.* at 26:2–5).

On April 25, 2015, Defendant Montas showed G.S. and O.A. separately a photo array that included Plaintiff's photograph. (Defs.' 56.1, Dkt. 83, ¶¶ 20–21; *see also* Photo Array Reports, Dkt. 82-3.) G.S. and O.A. both identified Plaintiff from the photo array as the person who had committed the laundromat robbery. (Montas Dep., Dkt. 82-2, at 62:23–63:5.) Based on these identifications, an I-card was issued in Plaintiff's name, indicating that Plaintiff was "wanted" in connection with the robberies. (Defs.' 56.1, Dkt. 83, ¶ 24; Montas Dep., Dkt. 82-2, at 88:18–24.) On April 27, 2015, Plaintiff was brought to the NYPD's 79th precinct by the warrant squad based on the I-card.[7] (Deposition of Emanuel Dash ("Dash Dep."), Dkt. 82-1, at 82:5–7, 123:5–11.) When Plaintiff was brought to the precinct, Defendant Johnson recognized him as someone who had approached Johnson during the course of the investigation to offer help. (Deposition of Detective Johnson ("Johnson Dep."), Dkt. 92-2, at 125:6–12; *id*. at 63:3–18 (testifying that, while he was investigating the robbery of either the deli or the laundromat, Plaintiff approached him on the street and asked whether he could help).) Defendant Johnson believes that he may have asked Defendant Montas to step out of the interview room to tell him that Johnson recognized Plaintiff from that interaction. (*Id*. at 125:6–9.) According to Defendant Johnson, he and Defendant Montas interviewed Plaintiff together. (*Id*. at 118:4–6, 121:6–8.)[8] Plaintiff, however, claims that

---

[7] According to Plaintiff, that morning, he had smoked K2 for the first time. (Defs.' 56.1, Dkt. 83, ¶¶ 26–28; Dash Dep., Dkt. 82-1, at 114:8–15.) K2 is an informal name for a type of synthetic marijuana. *See Torres v. City of New York*, No. 17-CV-6604 (GBD) (DCF), 2019 WL 4784756, at *1 n.3 (S.D.N.Y. Sept. 30, 2019).

[8] Defendant Johnson testified at his deposition that he and Montas were "the only ones . . . in the interview room" with Plaintiff (Johnson Dep., Dkt. 92-2, at 118:4–6), and that Johnson did not remember "[any] time that Detective Montas was alone in the room with [Plaintiff]" (*id*. at 121:6–8). The record contains no deposition testimony from Defendant Montas about the post-arrest interview.

he was only interviewed by Defendant Montas. (Dash Dep., Dkt. 82-1, at 151:5–11.)[9] During the interview, Plaintiff wrote a statement confessing to the four robberies. (Defs.' 56.1, Dkt. 83, ¶ 30; *see also* Dkt. 82-4.) Plaintiff disputes the voluntariness of that confession, claiming that he was forced to write it by Defendant Montas. (Dash Dep., Dkt. 82-1, at 138:2–9.)

Plaintiff was subsequently arrested on charges relating to the commission of all four robberies.[10] (Defs.' 56.1, Dkt. 83, ¶ 36.)

### B.    Plaintiff's Written Statement

Plaintiff testified in his deposition that his written post-arrest statement was coerced based on the following account of events.[11] (*See generally* Dash Dep., Dkt. 82-1.) At some point after Plaintiff arrived at the 79th precinct on April 27, 2015, he told Defendants Montas and Johnson that he did not commit the robberies. (*Id.* at 137:4–12.) Plaintiff was then taken to a computer, where Defendants showed him "photos of people," presumably the photo array. (*Id.* at 137:7–16; Dash Dep., Dkt. 92-1, at 130:21–24.) Defendant Montas also showed him a video of the

---

[9] As discussed more *infra*, despite alleging in the Second Amended Complaint ("SAC") and testifying at his deposition that Defendant Johnson was not present when Defendant Montas mistreated and threatened to shoot Plaintiff, Plaintiff changes his story in his opposition to Defendants' motion and essentially claims that both Defendants were present during the allegedly coerced confession. (*See* Plaintiff's Opposition to Defendants' Motion for Summary Judgement ("Pl.'s Opp."), Dkt. 91, at 10.)

[10] Other than G.S.'s and O.A.'s identifications of Plaintiff from the photo array, the record does not indicate what other evidence, if any, Defendants had with respect to Plaintiff's involvement in all four robberies. However, as previously noted, the four robberies were investigated as a "pattern" because of their similarities, including the fact that each was committed by a lone African-American man of like description. (Defs.' 56.1, Dkt. 83, ¶¶ 7, 9; *see also* Montas Dep., Dkt. 82-2, at 25:6–26–11.)

[11] Despite challenging Plaintiff's account of his post-arrest interview and the circumstances leading to his written confession as, *inter alia*, "unsupported by any evidence" (Defs.' Mot., Dkt. 87, at 11), Defendants do not proffer any contrary evidence from Defendant Montas, such as deposition, hearing, or trial testimony, or a sworn affidavit/declaration, as to the circumstances of Plaintiff's post-arrest interview.

4

laundromat robbery and said, "[t]hat's you," to which Plaintiff replied, "[n]o, it's not." (Dash Dep., Dkt. 82-1, at 106:15–25.) Defendants then walked Plaintiff to the interrogation room. (*Id.* at 137:16.) While Defendant Johnson was out of the room, Plaintiff informed Defendant Montas that Plaintiff had smoked K2. (*Id.* at 137:17–22.) Defendant Montas refused to allow Plaintiff to use the bathroom, told Plaintiff that he could not have a lawyer, and, after Plaintiff had been waiting for half an hour, instructed Plaintiff to "write this confession or I'm going [to] kill you." (*Id.* at 138:2–9.) When Plaintiff asked how that was possible, Montas replied, "It's easy. I'm going to say you took my partner's gun and I'm going to shoot you dead and I'm going to justify it because of your background. You're in the system and you're a repeat offender." (*Id.* at 138:10–14.) About four minutes after making these threats, Defendant Montas retrieved—and had Plaintiff sign—a *Miranda* Warnings sheet (*id.* at 143:7–13), but Defendant Montas covered the substance of the form with his hand and thereby prevented Plaintiff from understanding what Plaintiff was signing (*id.* at 140:6–16). Defendant Montas next told Plaintiff to "[d]o a statement," and, when Plaintiff replied that he did not know what to write, Montas directed that, "I say it, you write it." (*Id.* at 143:16–17.) Defendant Montas told Plaintiff the "exact words to write" (*id.* at 144:16–17), and Plaintiff wrote down word-for-word what Defendant Montas said to him (*id.* at 144:20–22, 145:5–16). Defendant Montas himself handwrote the addresses of the robbery locations after Plaintiff wrote his statement. (*Id.* at 147:2–23.)

Plaintiff further testified that everything in the statement, both content and formatting, was done at Defendant Montas's direction (*id.* at 148:25–149:1), and that Defendant Johnson was not in the room when Plaintiff wrote the statement (*id.* at 151:5–11). According to Plaintiff, after the statement was complete, Defendant Montas said he would "make a copy and fax it to the [District Attorney] right now." (*Id.* at 153:4–10.) Defendant Montas then escorted Plaintiff to the

bathroom, after which Plaintiff was fingerprinted and arrested for having committed the robberies. (*Id.* at 153:18–24.)

## C.     State Court Proceedings[12]

On or about May 13, 2015, Plaintiff was indicted for the following crimes: four counts of Robbery in the First Degree; four counts of Robbery in the Third Degree; four counts of Grand Larceny; four counts of Petit Larceny; Attempted Robbery in the First Degree; Attempted Robbery in the Third Degree; Attempted Grand Larceny in the Fourth Degree; and Attempted Petit Larceny. (Defs.' 56.1, Dkt. 83, ¶ 37.)

### 1.     State Court Pre-Trial Hearing

On October 24, 2016, a pre-trial hearing was held in Kings County Supreme Court (*Id.* ¶ 41; *see generally* Pretrial Hearing Transcript ("Pretrial Tr."), Dkt. 82-6), at which Plaintiff's counsel moved to suppress Plaintiff's written confession on the grounds that there was no probable cause to arrest Plaintiff (Pretrial Tr., Dkt. 82-6, at 45:5–7). Defendant Montas testified at this hearing.[13]  The court found that probable cause to arrest Plaintiff existed based on O.A.'s identification of Plaintiff in the laundromat security video, and that probable cause was "amplified" when G.S. and O.A. each identified Plaintiff as the laundromat robber in the photo array. (Defs.' 56.1, Dkt. 83, ¶ 47; Pretrial Tr., Dkt. 82-6, at 49:25–50:7.) The state court also held

---

[12] Only Defendants have submitted transcript excerpts from Plaintiff's state court pre-trial hearing (Dkt. 82-6) and Plaintiff's state court criminal trial (Dkt. 82-7).

[13] The short excerpt of the transcript from Plaintiff's state court pre-trial hearing that is provided as part of the record before the Court contains only a few lines of Defendant Montas's re-cross examination and references by the prosecution and the judge to Montas's testimony regarding the post-arrest interview. (*See* Pretrial Tr., Dkt. 82-6, at 44, 47:6–8, 47:19–21.) Based on this excerpt, it appears as though Defendant Montas testified that Montas did not "take any handwritten notes as to what [Plaintiff] told" him at the interview. (*Id.* at 44:10–12.) It is not clear from the record before the Court which other witnesses, if any, testified at the pre-trial hearing.

that Plaintiff's written statement did not "appear to be coerced or indicative of any type of mental or physical coercion." (Defs.' 56.1, Dkt. 83, ¶ 48; Pretrial Tr., Dkt. 82-6, at 51:15–52:11.)

### 2. State Court Criminal Trial

Plaintiff's criminal trial in Kings County Supreme Court began on October 26, 2016.[14] (Defs.' 56.1, Dkt. 83, ¶ 41.) G.S. testified at the trial but was not asked to identify Plaintiff in open court. (*Id.* ¶ 49; Trial Transcript, Dkt. 82-7.) O.A. did not testify at the trial. (Montas Dep., Dkt. 82-2, at 272:16–17.) Defendant Montas testified at trial "about the details of all four robberies," "[his] interview of [Plaintiff]," and "[Plaintiff's] confession to all four robberies." (*Id.* at 41:18–25.)[15] It is not clear from the record whether Defendant Johnson testified.

On November 2, 2016, Plaintiff was acquitted of all criminal charges. (Defs.' 56.1, Dkt. 83, ¶ 51; Certificate of Disposition Acquittal, Dkt. 82-8.)

## II. Procedural History

Plaintiff commenced this action on January 30, 2017. (Complaint, Dkt. 1.) He amended his Complaint on May 29, 2017. (Amended Complaint, Dkt. 21.) At a pre-motion conference held on May 31, 2017, Plaintiff withdrew a number of his claims.[16] (*See* May 31, 2017 Minute

---

[14] There is little from the state court record before this Court. Defendants' excerpt of the state court trial transcript contains only the direct examination of witness G.S., in which he testifies as to the video footage of the laundromat robbery and his identification of Plaintiff in the video. (Trial Transcript, Dkt. 82-7, at 145:24–147:13.) Plaintiff did not put any portion of the trial into the record.

[15] As previously noted, Defendants have only provided a short excerpt of Defendant Montas's state court criminal trial testimony. Indeed, instead of providing Montas's trial testimony regarding his investigation of the robberies and Plaintiff's interview and confession, Defendants rely on Montas's *deposition* testimony in the instant litigation, in which Montas describes his state court trial testimony.

[16] Plaintiff at this time withdrew claims against all Defendants, including the City of New York, except as against Defendants Montas and Johnson. (May 31, 2017 Minute Entry.)

Entry.) As directed by the Court, Plaintiff filed a Second Amended Complaint on June 30, 2017 (Dkt. 34), but because that complaint did not fully comply with the Court's instructions (*see* July 11, 2017 Order), Plaintiff filed a revised Second Amended Complaint on August 21, 2017 (Second Amended Complaint ("SAC"), Dkt. 38). Shortly before Defendants requested a pre-motion conference for their anticipated summary judgment motion (Dkt. 64), Plaintiff sought to further amend his complaint (Dkt. 63), and the Court directed Plaintiff to explain why as part of his response to Defendants' request (Sept. 28, 2018 Order). Plaintiff ultimately decided not to respond to Defendants' letter (Dkt. 73), and no third amended complaint was filed. Instead, at the Court's direction, the parties proposed a briefing schedule for Defendants' anticipated summary judgment motion. (Nov. 15, 2018 Order; Proposed Briefing Schedule, Dkt. 76.) After Defendants' summary judgment motion was fully briefed on April 4, 2019 (Dkts. 81–87), Plaintiff requested permission to file additional supporting documents, which the Court granted over Defendants' objections (Dkts. 93, 94). In response to Plaintiff's submission (Dkt. 96), Defendants requested oral argument (Dkt. 99). The Court did not grant oral argument and now denies that request as moot.

### STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The initial burden of "establishing the absence of any genuine issue of material fact" rests with the

moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the non-moving party is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (internal quotation and emphasis omitted).

When assessing whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

## DISCUSSION

In his Second Amended Complaint, Plaintiff alleges claims pursuant to § 1983 for: (1) unlawful imprisonment (SAC, Dkt. 38, ¶¶ 51–55); (2) malicious prosecution (*id.* ¶¶ 56–60); (3) abuse of process (*id.* ¶¶ 61–65); (4) denial of the right to a fair trial (*id.* ¶¶ 66–70); and (5) failure to intervene (*id.* ¶¶ 71–77). Plaintiff also asserts a separate equal protection claim, based on his

9

alleged false arrest, under §§ 1981 and 1983.[17] (*Id.* ¶¶ 45–50.) Defendants move for summary judgment on all of Plaintiff's claims. The Court addresses each claim in turn.

## I. Generalized Deprivation of Rights

As his first cause of action, Plaintiff brings a claim under 42 U.S.C. §§ 1981[18] and 1983[19] against both Defendants, alleging violations of his rights under the Fourth and Fourteenth Amendments. (*Id.* ¶¶ 45–50.) More specifically, Plaintiff alleges that Defendants acted "with the intent to discriminate on the basis of race" and otherwise "engaged in conduct and actions that are forbidden by the United States Constitution." (*Id.* ¶ 49.) The Court construes Plaintiff as alleging that he was falsely arrested because of racial discrimination, in violation of both his Fourth and Fourteenth Amendment rights.

In order to prevail on an equal protection claim under the Fourteenth Amendment, Plaintiff must show that Defendants' conduct "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 608–09 (1985) (citations omitted). However, Plaintiff fails to allege or demonstrate any facts suggesting that his arrest and the events

---

[17] As reflected in the procedural history, Plaintiff's counsel has had difficulty identifying the proper legal theory and claims he should be bringing in this matter.

[18] Section 1981 provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

[19] "Section 1983 is not itself a source of any substantive rights" and "merely provides a method for vindicating federal rights conferred elsewhere." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

related thereto were motivated by a discriminatory purpose or that Defendants' conduct had a discriminatory effect on Plaintiff. The Court therefore grants Defendants' summary judgment motion as to Plaintiff's equal protection claim.

To the extent that Plaintiff also alleges false arrest as part of the first cause of action, that claim is addressed below as part of Plaintiff's separate claim for false arrest/unlawful imprisonment. (*See* SAC, Dkt. 38, ¶¶ 1, 19, 76.)

## II. False Arrest/Unlawful Imprisonment

Plaintiff's second cause of action asserts a claim against both Defendants for unlawful imprisonment (*id.* ¶¶ 51–55), which is, "in effect, a claim for 'false imprisonment.'" *Sampson v. City of Schenectady*, 160 F. Supp. 2d 336, 346 n.14 (N.D.N.Y. 2001); *see Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (noting that, under New York law, false arrest and false imprisonment are "synonymous").[20] The Court considers this claim, then, as alleging false arrest. (*See also* Pl.'s Opp., Dkt. 91, at 8 (characterizing his unlawful imprisonment claim as one of "unlawful seizure and false arrest").)

Analysis of a false arrest claim under § 1983 is "substantially the same" as that for a false arrest claim under New York State law, and requires plaintiff to show that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003) (internal quotations and citation omitted). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action

---

[20] Moreover, in this Circuit, "[t]he common law tort of false arrest is a species of false imprisonment." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citing *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975)); *see also Mitchell v. Home*, 377 F. Supp. 2d 361, 371 n.3 (S.D.N.Y. 2005) ("The right against false imprisonment in the criminal prosecution context extends only to pre-trial detention, rendering false arrest and false imprisonment synonymous.").

for false arrest, whether that action is brought under state law or under § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (internal quotations and citation omitted); *see also Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) ("Probable cause is a complete defense to a constitutional claim of false arrest and false imprisonment." (internal citations omitted)).

The parties do not dispute the first three elements of Plaintiff's false arrest claim. Rather, Defendants maintain that there was probable cause to arrest Plaintiff on April 27, 2015 because G.S. and O.A. had identified Plaintiff from a photo array as the person who committed the laundromat robbery. (Defs.' Mot., Dkt. 87, at 6–8, 17.) Plaintiff argues that the eyewitnesses' identifications are insufficient to establish probable cause and that Plaintiff's allegedly coerced written statement is the sole basis on which Defendants can assert probable cause. (Pl.'s Opp., Dkt. 91, at 8–9.) That is plainly incorrect.

"[P]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Wieder v. City of New York*, 569 F. App'x 28, 29 (2d Cir. 2014) (summary order) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)); *see also Panetta*, 460 F.3d at 395 ("[I]nformation gleaned from informants can be sufficient to justify the existence of probable cause."). Where there is no reason to question the reliability of the identification or the veracity of a witness, the identification of a suspect by a firsthand witness is generally sufficient to establish probable cause to arrest. *See, e.g., Norwood v. Mason*, 524 F. App'x 762, 765 (2d Cir.

2013) (summary order) ("New York courts routinely hold that a victim's photo identification of a person provides the police with probable cause to arrest that person, even where the identification may not be 100% reliable." (internal citations omitted)); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005); *see also Celestin v. City of New York*, 581 F. Supp. 2d 420, 431 (E.D.N.Y. 2008) (noting that "[a] positive photo identification by an eyewitness is normally sufficient to establish probable cause").

Here, G.S. and O.A. each identified Plaintiff[21] as the perpetrator of the laundromat robbery from the photo array. G.S. was an eyewitness to the laundromat robbery, while O.A. identified Plaintiff from the security video of the laundromat robbery based on O.A. having seen Plaintiff in his deli before.[22] These identifications provided sufficient probable cause for Defendants to arrest Plaintiff. *See Williams v. City of New York*, No. 10-CV-2676 (JG) (LB), 2012 WL 511533, at *5 (E.D.N.Y. Feb. 15, 2012) ("[A]n eyewitness's unequivocal identification of an individual as the perpetrator of the crime generally establishes probable cause, as long as it is reasonable to believe the eyewitness under the circumstances." (internal citations omitted)). Plaintiff fails to point to any evidence of fraud or incompetence with regard to the witnesses' identifications of Plaintiff, or any other basis for finding that Defendants' reliance on that evidence was unreasonable. And,

---

[21] Plaintiff argues, without any support, that the identification of Plaintiff by G.S. and O.A. is "hearsay and fabricated by Montas." (Pl.'s Opp., Dkt. 91, at 11.) However, the Court finds these arguments unavailing and notes that Defendants have submitted Photo Array Instruction Reports signed by G.S. and O.A. on April 25, 2015. (*See* Dkt. 82-3.)

[22] Indeed, Plaintiff admits that G.S. and Plaintiff were acquainted, as Plaintiff would go to the laundromat twice a week and exchange pleasantries with G.S. (Dash Dep., Dkt. 82-1, 86:25–87:25.) To an extent, this fact undercuts the argument that G.S.'s identification of Plaintiff as the perpetrator was unreliable, given that G.S. knew Plaintiff from before. On the other hand, Plaintiff could argue that G.S. mistakenly identified Plaintiff as the robber based on his general memory and familiarity with Plaintiff. In any event, given that there is no evidence that this connection played any role in Defendants' assessment of probable cause to arrest Plaintiff, it is irrelevant to the instant motion.

even if these identifications only provided probable cause to arrest Plaintiff for committing one of the four robberies, that would be enough to defeat his false arrest claim. *See Collins v. City of New York*, 295 F. Supp. 3d 350, 364 (S.D.N.Y. 2019) ("An officer need only have probable cause for one offense to arrest the individual regardless of what that person is ultimately charged with." (citing *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012)).

Furthermore, to the extent that Plaintiff claims to have protested his innocence,[23] "[t]he Second Circuit has held consistently that conflicting accounts of a crime do not vitiate the probable cause established by an eyewitness identification or alleged victim of a crime." *Crews v. County of Nassau*, 996 F. Supp. 2d 186, 205–06 (E.D.N.Y. 2014) (citing, *inter alia*, *Panetta*, 460 F.3d at 395–96). Similarly, Plaintiff's claims as to Defendant Montas that he (Plaintiff) had alibis for three of the robberies do not vitiate probable cause.[24] *Sorrell v. County of Nassau*, 162 F. Supp. 3d 156, 170 (E.D.N.Y. 2016) ("[T]he mere assertion of an alibi, and even the failure to investigate such an alibi to plaintiff's satisfaction, does not overcome the existence of probable cause to prosecute where there is no evidence of fraud or suppression of evidence." (quoting *Candelario v. City of New York*, 2013 WL 1339102, at *7 (S.D.N.Y. Apr. 3, 2013), *aff'd*, 539 F. App'x 17 (2d Cir. 2013) (summary order)); *see also Coons v. Casabella*, 284 F.3d 437, 441 (2d Cir. 2002)

---

[23] In his deposition, Plaintiff testified that he told Defendants that he did not commit the robberies. (Dash Dep., Dkt. 82-1, at 137:4–6.)

[24] Plaintiff presents as undisputed the fact that he presented alibis to Defendant Montas for the days on which three of the robberies took place. (Pl.'s 56.1, Dkt. 90, at ECF 4 ¶ 24.) However, the record citation in support of this allegedly undisputed fact points only to Plaintiff's deposition testimony, in which he testifies as to the existence of these alibis. (Dash Dep., Dkt. 92-1, at 93:14–25.) This self-serving testimony does not establish that Plaintiff, in fact, told Defendant Montas on the day of Plaintiff's arrest that he had alibis for three of the days on which the robberies occurred. In any event, even assuming the truth of this claim, it does not undermine the existence of probable cause to arrest Plaintiff for the robberies in this case.

("[P]olice officers are not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." (internal quotations and citations omitted)).

The Court therefore concludes that, even construing the facts in the light most favorable to Plaintiff, Defendants had probable cause to arrest Plaintiff for committing one or more robberies.[25] *See Thomas v. City of New York*, No. 11-CV-2219 (LAP) (GWG), 2013 WL 1325186, at *6–7 (S.D.N.Y. Apr. 2, 2013) (granting summary judgment in defendants' favor where the disputed facts, interpreted in the light most favorable to plaintiff, nonetheless supported a finding that

---

[25] Plaintiff also argues that, because a DNA sample belonging to the robbery suspect was recovered at the scene of one of the robberies, and because that sample did not belong to Plaintiff, Defendants lacked probable cause. (Pl.'s Opp., Dkt. 91, at 9.) Plaintiff refers to the April 27, 2015 Completed Apprehension report, which notes that Plaintiff "has DNA on file" (Dkt. 96-3), and to the report documenting that a DNA swab was taken at the laundromat on April 24, 2015 (Dkt. 96-4). However, aside from a "certification" from Plaintiff's counsel (Dkt. 92, ¶ 8), there is no evidence in the record that the DNA sample found at the laundromat did not match Plaintiff's DNA. Indeed, at best, Plaintiff's counsel asked Defendant Montas about another report at Montas's deposition, which indicated that the DNA swab taken from the laundromat was "sufficient" for "typing"; but there is no indication in Montas's deposition testimony that this report conclusively established that the DNA did not belong to Plaintiff, and Plaintiff has not submitted that report into evidence. (*See* Dkt. 96-4, at ECF 4.) Furthermore, because Plaintiff has not established that the DNA test results were returned prior to the grand jury indictment, this purported evidence does not vitiate probable cause. *See, e.g.*, *Fappiano v. City of New York*, No. 01-CV-2476 (SLT) (SMG), 2015 WL 94190, at *13–14 (S.D.N.Y. Jan. 7, 2015) (finding that serology results obtained after the grand jury indictment was returned did not rebut the presumption of probable cause for a malicious prosecution claim).

Plaintiff further maintains that Defendants discounted the fact that an eyewitness to the wine store robbery had identified a different person as the suspect in the photo array. (Pl.'s Opp., Dkt. 91, at 9.) In support of this argument, Plaintiff has provided a Witness Report Summary indicating that a witness described another individual in the photo array as "look[ing] pretty familiar from the guy in the wine store." (Dkt. 96-5.) However, such a statement does not constitute a positive identification for purposes of probable cause. *See, e.g.*, *Williams*, 2012 WL 511533, at *4 ("While an unequivocal identification is generally sufficient to establish probable cause, an identification that is tentative or uncertain may, on its own, be insufficient." (citations omitted)). This tentative identification of another individual does not overcome probable cause to arrest Plaintiff where he was positively identified by two witnesses as the perpetrator of the laundromat robbery.

probable existed to support the plaintiff's arrest), *aff'd*, 562 F. App'x 58 (2d Cir. 2014) (summary order).

Accordingly, Plaintiff's claim for false arrest/unlawful imprisonment is dismissed.

## III. Malicious Prosecution

Plaintiff's third cause of action asserts a malicious prosecution claim against both Defendants. (SAC, Dkt. 38, ¶¶ 56–60.)

In order to prevail on a claim for malicious prosecution in violation of § 1983, "a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against [him]; (ii) the termination of the proceeding in [his] favor; (iii) 'that there was no probable cause for the proceeding'; and (iv) 'that the proceeding was instituted with malice.'" *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (citation omitted) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)). In addition to these elements, a plaintiff proceeding under § 1983 must also "show a 'seizure or other perversion of proper legal procedures implicating the [plaintiff's] personal liberty and privacy interests under the Fourth Amendment.'" *Id.* (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

"The existence of probable cause is a complete defense to a claim of malicious prosecution in New York[.]" *Manganiello*, 612 F.3d at 161–62 (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). However, "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases" and is determined by "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013) (internal quotations and citation omitted). In the context of malicious prosecution, "indictment by a grand jury creates a presumption of probable cause," *Manganiello*, 612 F.3d at 162 (quoting *Savino*, 331 F.3d at 72), but "the

presumption is rebuttable, and may be overcome by evidence establishing that the police witnesses 'have not made a complete and full statement of facts . . . that they have misrepresented or falsified evidence . . . or otherwise acted in bad faith[,]'" *McClellan v. Smith*, 439 F.3d 137, 146 (2d Cir. 2006) (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)); *see also Sorrell*, 162 F. Supp. 3d at 169 ("[E]ven if probable cause existed at the time of arrest, evidence could later surface which would eliminate that probable cause[.]" (internal quotations and citations omitted)). "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Nunez v. Diedrick*, No. 14-CV-4182 (RJS), 2017 WL 2257350, at *7 (S.D.N.Y. May 19, 2017) (quoting *Savino*, 331 F.3d at 73).

Defendants assert that Plaintiff's indictment created a presumption of probable cause that Plaintiff cannot rebut, and point to case law establishing that,

> [w]here plaintiff's only evidence is his own version of events, courts have found that such evidence amounts to nothing more than "mere conjecture and surmise that the plaintiff's indictment was procured as a result of conduct undertaken by the defendants in bad faith," and thus insufficient to rebut the presumption of probable cause created by the indictment.

*Garnett v. City of New York*, No. 13-CV-7083 (GHW), 2014 WL 3950904, at *10 (S.D.N.Y. Aug. 13, 2014) (quoting *Savino*, 331 F.3d at 73).

Here, the Court finds that Plaintiff's claim that Defendants engaged in bad-faith conduct by coercing his confession is insufficient to rebut the presumption of probable cause arising out of Plaintiff's indictment. First, Plaintiff, who bears the burden of rebutting the presumption, has provided no information about what evidence was presented to the grand jury. Second, even assuming that Plaintiff's confession was presented to the grand jury, and even crediting Plaintiff's inherently implausible claim about Defendant Montas's threats against Plaintiff during the post-arrest interview, Plaintiff's confession was not the only evidence establishing probable cause to indict him for the robberies. As previously discussed, the grand jury could have found that G.S.'s

and O.A.'s identification of Plaintiff as the perpetrator of the laundromat robbery, in addition to the material similarities between all four robberies, were sufficient to establish that probable cause existed. Plaintiff has therefore failed to rebut the presumption of probable cause arising out of the grand jury's indictment. *See Garnett*, 2014 WL 3950904, at *10 (noting that a plaintiff seeking to rebut presumption of probable cause must demonstrate that "plaintiff's indictment was procured as a result of conduct undertaken by the defendants in bad faith" (quoting *Savino*, 331 F.3d at 73)). Here, Plaintiff merely asserts that "[e]vidence of bad-faith is sufficient to rebut the presumption of probable cause."[26] (Pl.'s Opp., Dkt. 91, at 11.)

Plaintiff's reliance on this Court's decision in *Rhooms v. City of New York* is misplaced. *See Rhooms*, No. 11-CV-5910 (PKC) (RER), 2017 WL 1214430, at *8–9 (E.D.N.Y. Mar. 31, 2017). *Rhooms* is distinguishable on several grounds. First, in *Rhooms*, the Court declined to find that the defendants had probable cause to even arrest Rhooms because "a reasonable jury could find [d]efendants' identifications of [plaintiff] [] insufficiently reliable." *Id.* at *7. Second, the Court in *Rhooms* had "record evidence suggesting that . . . the [individual defendant-officers] [had] provided false and incomplete information to the [Assistant District Attorney], and, in the case of [another defendant] in particular, [had] applied coercive interrogation techniques to procure a false identification of [the plaintiff] at the outset of the investigation." *Id.* at *9. Thus, in contrast to this case, the *Rhooms* plaintiff presented evidence, and not "mere conjecture and surmise[,] [showing] that the plaintiff's indictment was procured as a result of conduct undertaken by the defendants in bad faith[.]" *Garnett*, 2014 WL 3950904, at *10 (quoting *Savino*, 331 F.3d at 73)); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010) (noting that the

---

[26] Plaintiff also alleges in his Second Amended Complaint that Defendants' "perjured testimony . . . led to the false and perjured indictment of [Plaintiff]" (SAC, Dkt. 38, ¶ 25), but Plaintiff provides no evidence to support that claim in opposing Defendants' motion.

presumption may be overcome "only by evidence establishing that the police witnesses have not made a complete and full statement of the facts either to the grand jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith" (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1250–51 (N.Y. 1983))).

Accordingly, the Court finds that Plaintiff has not met his burden to rebut the presumption of probable cause for his prosecution for the robberies. *See, e.g.*, *McClennon v. New York City*, No. 13-CV-128 (KAM) (SMG), 2018 WL 2943565, at *17 (E.D.N.Y. June 11, 2018) ("The little information plaintiff[] do[es] present fails to meet plaintiff's burden to 'submit evidence sufficient for a reasonable jury to find that [his] indictment [was] procured as a result of police conduct,' including fraud, perjury, and the suppression of evidence, 'undertaken in bad faith.'" (quoting *Savino*, 331 F.3d at 73)).

Furthermore, even if the presumption of probable cause did not apply, Defendants have demonstrated, as a matter of law, that probable cause existed for Plaintiff's prosecution, based on the laundromat security video, the two witness identifications, and the similarities between the four robberies. *See Manganiello*, 612 F.3d at 161–62 ("The existence of probable cause is a complete defense to a claim of malicious prosecution in New York[.]" (quoting *Savino*, 331 F.3d at 72)). The Court finds that this evidence satisfies the "slightly higher" probable cause standard for malicious prosecution claims of "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury*, 721 F.3d at 95 (noting that the probable cause standard in the "malicious prosecution context" is slightly higher than in false arrest cases).[27]

---

[27] In reaching this conclusion, the Court is aware that "a finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges that were resolved in the plaintiff's favor[.]" *D'Angelo v. Kirschner*, 288 F. App'x 724, 726–27 (2d Cir. 2008) (summary order); *see also id.* at 727 (finding that, "in the absence of a finding of probable cause to arrest [plaintiff] as to the other larceny count and the two bribery

The Court, therefore, dismisses Plaintiff's malicious prosecution claim.[28]

## IV.    Abuse of Process

Plaintiff alleges a claim of malicious abuse of process against both Defendants. (SAC, Dkt. 38, ¶¶ 61–65.)

"The elements of a § 1983 cause of action for malicious abuse of process are provided by state law." *Sorrell*, 162 F. Supp. 3d at 170 (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). In New York,

> a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.

*Savino*, 331 F.3d at 76 (citation omitted). "The use of the instrument or process must have itself been improper." *Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 638 (S.D.N.Y. 2015) (citation omitted); *see also Mangino v. Village of Patchogue*, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011) ("[T]he gist of the tort of abuse of process, [as] distinguished from malicious prosecution, is not commencing an action or causing process to issue without justification, but misusing or misapplying process *justified in itself* for an end other than that which it was designed to accomplish." (emphasis in original) (internal quotation marks and citations omitted)). A "collateral objective" is "usually characterized by personal animus," *Jovanovic v. City of New York*, No. 04-CV-8437 (PAC), 2010 WL 8500283, at *9 (S.D.N.Y. Sept. 28, 2010) (citation

---

[28] Because the Court's finding as to probable cause resolves the malicious prosecution claim, the Court does not address the issue of whether Plaintiff could demonstrate actual malice.

counts, the grant of summary judgment as to his malicious prosecution claim on these three counts was not proper"). Based on the evidence, here, that the perpetrator of all four robberies was the same person, the Court specifically finds that the evidence supporting probable cause to believe that Plaintiff committed the laundromat robbery was sufficient to establish probable cause to prosecute him for all four robberies.

omitted), *aff'd*, 486 F. App'x 149 (2d Cir. 2012) (summary order), and may include "infliction of economic harm, extortion, blackmail [or] retribution[,]" *Brandon*, 705 F. Supp. 2d at 275 (citation omitted).

Here, Plaintiff offers no evidence suggesting that Defendant Montas sought to prosecute Plaintiff with a collateral objective. As previously discussed, though Plaintiff alleged that Defendants were motivated by racial animus in arresting him, he has failed to put forth any evidence to support that claim. Without evidence that Defendant Montas harbored any personal animus toward Plaintiff or acted with some other collateral objective—*i.e.*, one not related to law enforcement—in arresting Plaintiff, Plaintiff's claim for malicious abuse of process cannot succeed. Accordingly, the Court grants summary judgment to Defendants on this claim.

## V. Denial of the Right to a Fair Trial

Plaintiff alleges that Defendants denied him the right to a fair trial by falsely claiming that Plaintiff had voluntarily confessed to the four robberies. (SAC, Dkt. 38, ¶¶ 66–70.) Defendants argue that "[P]laintiff's story is unsupported by any evidence and so ridiculous that he should not be able to survive summary judgment." (Defs.' Mot., Dkt. 87, at 11.) The Court agrees.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). To succeed on a § 1983 claim alleging denial of the right to a fair trial, a plaintiff must prove that "an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer*

*C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citations omitted). "Probable cause is not a defense" to a § 1983 claim alleging the denial of the right to a fair trial. *See Jovanovic*, 486 F. App'x at 152 (quoting *Ricciuti*, 124 F.3d at 129–130).

While the parties have given different accounts of Plaintiff's post-arrest interview,[29] the Court does not find that this factual dispute is "genuine," given the implausibility of Plaintiff's account and his self-contradiction on a key fact, namely, whether Defendant Johnson was present during the alleged threats made by Defendant Montas. Though "it is not the role of the Court at summary judgment to resolve [a] factual clash[,]" *see, e.g.*, *Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017),

> in the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," . . . without making some assessment of the plaintiff's account.

*Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 105 (2d Cir. 2011) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)); *see also Jeffreys*, 426 F.3d at 555 ("[N]o reasonable person would undertake the suspension of disbelief necessary to give credit to [plaintiff's] allegations[.]" (internal quotation and citation omitted)). "[W]hen the facts alleged are so contradictory that doubt is cast upon their plausibility, [the court is] authorized to pierce the veil of the complaint's factual allegations, dispose of some improbable allegations, and dismiss the claim." *Barua v. City of New York*, No. 14-CV-584 (NRB), 2016 WL 7494875, at *6 (S.D.N.Y. Dec. 29, 2016) (internal quotations and other citations omitted) (quoting *Shabazz v. Pico*, 994 F.

---

[29] Because the factual dispute arises from the separate testimony of Plaintiff and Defendant Johnson, the "sham issue of fact" doctrine does not apply here. *See Moll v. Telesector Res. Grp.*, 760 F.3d 198, 201 (2d Cir. 2014) (noting that, per the sham issue of fact doctrine, "a party cannot create a material issue of fact to defeat a motion for summary judgment by simply contradicting his earlier testimony").

Supp. 460, 468–71 (S.D.N.Y. 1998) (Sotomayor, J.)). Where the factual dispute is based on each side telling a different story, those stories must be "at least plausible" to create a "genuine" dispute of material fact. *See, e.g.*, *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) ("Where each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court." (citations omitted)); *cf. Edwards v. Pretsch*, 180 F. Supp. 2d 499, 506 (S.D.N.Y. 2002) (denying dismissal of plaintiff's coerced confession claim on summary judgment, where fact issues existed as to whether the confession was coerced, and where plaintiff claimed that she was "interrogated for five hours, was verbally harassed, was not allowed to take a break to smoke a cigarette, and [] was threatened that if she did not confess, her three-year-old son could be taken from her care").

Here, Plaintiff's version of the events is so far-fetched as to be implausible. Plaintiff claims that, while Defendant Johnson was out of the interrogation room, Defendant Montas: (1) refused to allow Plaintiff to use the bathroom (Dash Dep., Dkt. 82-1, at 138:2–5); (2) told Plaintiff that he could not have a lawyer (*id.* at 138:5–6); (3) after a half-hour (during which Defendant Johnson was apparently still outside of the room), instructed Plaintiff to "write this confession or I'm going [to] kill you" (*id.* at 138:6–9); (4) told Plaintiff, when he asked how Defendant Montas could do that, "It's easy. I'm going to say you took my partner's gun and I'm going to shoot you dead and I'm going to justify it because of your background. You're in the system and you're a repeat offender" (*id.* at 138:10–14); (5) had Plaintiff sign a *Miranda* warnings form while covering the substance of the form and preventing Plaintiff from understanding what he was signing (*id.* at 140:6–16, 143:7–13); and (6) dictated to Plaintiff what to write in his confession word-for-word (*id.* at 143:16–17). Aside from being implausible on its face, Plaintiff's account makes little sense in the context of this case. By the time Plaintiff was arrested and questioned, Defendant Montas

23

had the laundromat security videotape showing Plaintiff committing that robbery, O.A.'s identification of Plaintiff as the perpetrator depicted in the videotape, two positive witness identifications of Plaintiff from a photo array as the perpetrator of the laundromat robbery, and material similarities between the four robberies, including geography, method, and descriptions of the lone perpetrator. The fact that Defendant Montas did not need Plaintiff's confession in order to arrest or prosecute him makes Plaintiff's inherently improbable claims about Defendant Montas mistreating Plaintiff and then threatening to shoot him—apparently right then and there inside the precinct—in order to compel him to write a false confession thoroughly implausible, such that no reasonable jury would credit them. *See, e.g.*, *Barua*, 2016 WL 7494875, at *5 ("Considering all of the admissible evidence and granting all reasonable inferences in [plaintiff]'s favor, we find that no reasonable jury could credit this theory, which is hopelessly speculative and implausible.").

Plaintiff's account of Defendant Johnson being out of the room the entire time the interrogation was going on—or at least while Defendant Montas was threatening to shoot Plaintiff—is also inherently incredible. Indeed, Plaintiff now contradicts that portion of his account, instead effectively asserting, based on Defendant Johnson's deposition testimony,[30] that Johnson was, in fact, present during Plaintiff's entire interrogation.[31] (*See* Pl.'s Opp., Dkt. 91, at 10.) Seeking to reconcile his previous and current accounts, Plaintiff argues, in effect, that (1)

---

[30] As discussed, Defendant Johnson testified that he was in the room with Plaintiff and Detective Montas when Plaintiff wrote the statement, and that both Defendants instructed Plaintiff only to "tell us what happened." (Johnson Dep., Dkt. 92-2, at 137:21–24.) Defendant Johnson also testified that he and Defendant Montas were "the only ones . . . in the interview room" (*id.* at 118:4–6), and that Johnson did not remember "[any] time that Detective Montas was alone in the room with [Plaintiff]" (*id.* at 121:6–8).

[31] The Court presumes that the reason for Plaintiff's abrupt about-face regarding this fact is that he is seeking to defeat Defendants' dispositive argument that all claims against Defendant Johnson should be dismissed based on Plaintiff's own testimony that Johnson was not present when Defendant Montas allegedly coerced Plaintiff's false confession.

Plaintiff did not testify accurately or truthfully before, when he said that he was alone with Defendant Montas, and that, when he wrote his confession, Johnson was there, too; and (2) Defendant Johnson testified truthfully about being in the room with Defendant Montas when Plaintiff wrote his confession, but *not* about the circumstances leading up to that confession. Plaintiff's belated and opportunistic reversal on a key aspect of his previous account, namely, Defendant Johnson's absence from the interrogation room, and Plaintiff's contortionist efforts to reconcile his account with other evidence in this case, further undermine the credibility and plausibility of his story about being forced, upon pain of being shot by Defendant Montas, to confess to the robberies.

Because Plaintiff has failed to raise a *genuine* dispute of material fact with respect to whether Defendants falsified evidence as part of Plaintiff's prosecution, the Court grants summary judgment in favor of Defendants on his fair trial claim.[32]

## VI. Lack of Personal Involvement and Failure to Intervene as to Defendant Johnson

Defendants maintain that all claims against Defendant Johnson should be dismissed because he was not present for and was not involved in obtaining Plaintiff's allegedly coerced confession. (Defs.' Mot., Dkt. 87, at 6.) Defendants separately argue, based on the same fact, that Johnson cannot be found liable for failing to intervene with respect to the coerced statement. (*Id.* at 16 (arguing that, because "Plaintiff concedes that Detective Johnson was not in the room when he was allegedly threatened to confess[,] . . . there is no evidence in the record indicating that Detective Johnson failed to intervene in any unconstitutional conduct, nor is there evidence to

---

[32] Given the Court's dismissal of this claim on this ground, the Court does not address whether the causation prong of this claim is in dispute.

suggest that Detective Johnson had a realistic opportunity to intervene" (citation omitted)).) The Court agrees.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *see also Crandall v. David*, 457 F. App'x 56, 58–59 (2d Cir. 2012) (summary order) (affirming summary judgment dismissal of plaintiff's claims against defendant who had no personal involvement in an unlawful seizure); *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (requiring that a plaintiff demonstrate a defendant's "personal involvement" in an alleged § 1983 violation, defined as "personal participation by one who has knowledge of the facts that rendered the conduct illegal" or indirect participation such as "ordering or helping others to do the unlawful acts"). Furthermore, "[b]ecause 'personal involvement is a question of fact, [this Circuit] is governed by the general rule that summary judgment may be granted only if no issues of material fact exist and the defendant[s] [are] entitled to judgment as a matter of law.'" *Farrell*, 449 F.3d at 484 (quoting *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)).

To establish a claim for failure to intervene, a plaintiff must show that (1) the officer's failure "permitted fellow officers to violate [a plaintiff's] clearly established statutory or constitutional rights," and (2) it was "objectively unreasonable for [the officer] to believe that his fellow officers' conduct did not violate those rights." *Ricciuti*, 124 F.3d at 129 (internal quotation and citation omitted). Additionally, a plaintiff must show that the officer had "a realistic opportunity to intervene to prevent the harm from occurring" but failed to do so. *Cerbelli v. City of New York*, No. 99-CV-6846 (ARR) (RML), 2008 WL 4449634, at *11 (E.D.N.Y. Oct. 1, 2008) (internal quotation and citations omitted).

Here, based on the undisputed evidence, Defendant Johnson was not personally involved in obtaining Plaintiff's allegedly coerced confession. First, in Plaintiff's original version of events, Johnson was not in the room when Defendant Montas made the threats that led to the purportedly false confession. (Dash Dep., Dkt. 82-1, 141:20–23.) Second, and as discussed *supra*, Defendant Johnson testified that he was in the room with Plaintiff and Detective Montas when Plaintiff wrote the statement and that both Defendants instructed Plaintiff only to "tell us what happened." (Johnson Dep., Dkt. 92-2, 137:21–24; *id.* at 121:6–8 (noting that he did not remember "[any] time that Detective Montas was alone in the room with [Plaintiff]").) Because there is no factual dispute as to Defendant Johnson's lack of personal involvement in coercing a confession from Plaintiff, there is no basis for finding Johnson liable for any of Plaintiff's claims, all of which are based on the allegedly forced false confession.

Similarly, because Defendant Johnson was not present when Defendant Montas allegedly forced Plaintiff to confess, Johnson could not have intervened to prevent that conduct. Nor is there any evidence that Johnson knew that the confession was coerced or false or that Johnson knowingly transmitted false information to the prosecution regarding Plaintiff's confession.[33] Even though Plaintiff now abandons his prior version of events in an effort to place Defendant Johnson in the interrogation room during the allegedly coerced confession, the Court is not required to accept that claim.[34] *See Jeffreys*, 426 F.3d at 555 (rejecting plaintiff's allegations where

---

[33] In fact, there is no evidence that Johnson testified at the state court pre-trial hearing or trial, or played any role in Plaintiff's state court prosecution. The Second Amended Complaint fails to articulate the theory behind Plaintiff's failure to intervene claim as to Defendant Johnson.

[34] Furthermore, to the extent that Plaintiff's newly adopted version of events suggests that Defendant Johnson was personally involved in securing the coerced confession, that fact would undermine Plaintiff's failure-to-intervene claim, because a direct participant in misconduct cannot also be held liable for failing to intervene in that misconduct. *See Jackson v. City of New York*, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013).

"no reasonable person would undertake the suspension of disbelief necessary to give credit to [plaintiff's] allegations" (internal quotation, alteration, and citation omitted)); *Barua*, 2016 WL 7494875, at *6 (finding that "when the facts alleged are so contradictory that doubt is cast upon their plausibility, [the court is] authorized to pierce the veil of the complaint's factual allegations [and] dispose of some improbable allegations" (internal quotations and other citation omitted) (quoting *Shabazz*, 994 F. Supp. at 468–71)).

Accordingly, the Court grants summary judgment as to all claims against Defendant Johnson based on his lack of personal involvement, and separately as to the failure to intervene claim based on Johnson not having any opportunity to intervene in the alleged constitutional violations.

## VII.   Fifth Amendment

Plaintiff asserts for the first time in his opposition briefing that Defendants violated his Fifth Amendment *Miranda* rights when they coerced his confession. (Pl.'s Opp., Dkt. 91, at 13–15.) However, it is well established that a party may not "assert a cause of action for the first time in response to a summary judgment motion." *Greenidge v. Allstate Ins. Co.*, 312 F. Supp. 2d 430, 436–37 (S.D.N.Y. 2004) (citations omitted), *aff'd*, 446 F.3d 356, 361 (2d Cir. 2006); *see also Rojo v. Deutsche Bank*, 487 F. App'x 586, 588–89 (2d Cir. 2012) (summary order) ("We have refused to address the merits of claims raised for the first time at [summary judgment]." (citations omitted)). Because Plaintiff's argument appears nowhere in his Second Amended Complaint, this claim is waived.[35]

---

[35] The Court also notes that there is no civil action for a freestanding *Miranda* violation. *See Cox v. Aversa*, No. 18-CV-3898 (NSR), 2020 WL 815476, at *4 (S.D.N.Y. Feb. 19, 2020) ("Even if we were to assume that [plaintiff's] *Miranda* rights had been violated, that violation, standing alone, would not form a basis for liability under § 1983." (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510–11 (2d Cir. 1995) (*per curiam*))). Rather, Plaintiff must also allege that the

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted in its entirety, and all claims are dismissed. The Clerk of the Court is respectfully requested to enter judgement and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*

Pamela K. Chen
United States District Judge

Dated: March 31, 2020
      Brooklyn, New York

---

statement obtained in violation of his *Miranda* rights was used against him at trial, which Plaintiff fails to do. *See id.* (noting that the "proper remedy for such a violation 'is the exclusion from evidence of any ensuing self-incriminating statements and *not* a § 1983 action'" (emphasis in original) (quoting *DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998))).